## READY v. PURE CARBONIC, Inc.

### Civil Action No. 1634–T.

United States District Court
S. D. Florida, Tampa Division.
June 1, 1949.

T. Hart Getzen, Dade City, Fla., Carver, Langston & Carver, Lakeland, Fla., for plaintiff.

MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant.

DE VANE, District Judge.

This is a suit brought by plaintiff to recover for loss and damages to her property and for personal injuries growing out of a motor vehicle collision which occurred during the night of November 15, 1947, on U. S. Highway No. 41 in Pasco County, Florida.

Plaintiff alleges in her complaint that she was being transported in her automobile in a northerly direction at said time and place when the defendant, by and through its employee, negligently drove a

motor vehicle into the rear of plaintiff's automobile, causing her automobile to catch fire and be destroyed and causing her to suffer personal injuries. The complaint claims damages for such personal injuries and from loss of and damage to personal property of plaintiff, including her automobile.

Defendant denies any negligence on its part and alleges contributory negligence on the part of plaintiff and the case is before the court on these issues. The case was tried to the court without a jury.

## Negligence of Defendant

The court will first consider whether the evidence shows defendant guilty of negligence. The evidence shows that around 10:00 P.M. on the night of November 15, 1947 Joe E. Johnson, Sr., a neighbor of plaintiff, dropped in on her at her home in Brooksville, Florida and after a few minutes conversation with her, invited her to go with him to find something to eat. They used plaintiff's car and Johnson drove same. They first went to a restaurant in Brooksville, which was closed, and then to another eating place just outside of Brooksville, which they also found closed. They then proceeded to the Rainbow Inn, a few miles south of Brooksville, arriving there some time between 11:00 P.M. and midnight. Quite a crowd was gathered at the Inn and a barbeque supper was served around midnight. Plaintiff remained in her car from the time of their arrival until their departure. Johnson left her for awhile and mixed among the crowd until super was ready to be served, when he brought both their suppers to the car and they ate same. About the time they had finished with their supper an argument developed between a man and a woman in a parked car near the plaintiff's car and Johnson and plaintiff decided to leave.

The Rainbow Inn is a small tavern standing some distance back from the highway at an isolated spot just south of the Hernando County Line. Access to the place from the highway is provided by a horseshoe drive, which leaves the highway and circles in front of the Inn and returns to the highway. The two entrances on the highway are approximately 180 feet apart.

Plaintiff left the Inn by the north exit, Johnson driving her automobile. The car in which they were riding had proceeded on the highway 300 feet or more north of the exit driveway when it was struck from the rear by defendant's truck and was set fire and plaintiff was injured.

The facts regarding the circumstances of the accident are in substantial conflict. Plaintiff and plaintiff's companion Johnson, testified their car was running approximately 25 miles per hour at the time of the impact; that an approaching automobile from the north had declined to dim its lights and that they were proceeding cautiously along the highway until they passed this approaching car. The agent of defendant, in charge of defendant's truck, testified that plaintiff's car had come to a stop on the highway at the time of the accident and his testimony was supported by testimony of one other witness at the barbeque party.

Defendant's agent also testified that there were several cars approaching plaintiff's car and defendant's truck from the north. They refused to dim their lights and he was completely blinded by the bright lights of the approaching cars, until he was within approximately 60 feet of plaintiff's car.

Defendant also introduced in evidence testimony to the effect that Johnson, companion of plaintiff, who was operating her automobile, had been drinking on the night of the accident. Defendant produced one witness who testified somewhere around 9:00 P.M. on that night he had seen Johnson buy one bottle of beer and an attendant at the barbeque party testified that Johnson (with whom he was not acquainted) joined a group he was in at the party and with other members of the group took a drink of his whiskey when he passed it around. The highway patrolman testified that when he arrived at the scene of the accident, some 45 minutes after the accident occurred, that he detected the odor of intoxicants on Johnson's breath and Johnson's conduct was that of a man who had been drinking. The highway patrolman sent Johnson to the hospital for treatment of a slight scalp injury he had received in the accident.

The nurse at the hospital, who treated the wound, testified she neither saw nor smelled any evidence of drinking by Johnson. Plaintiff testified that Johnson had not had a drink all the time he was with her during the evening and that she did not smell alcohol on his breath.

■ The evidence shows that the highway in front of the Rainbow Inn is straight for a long distance on each side of the Inn; that it has two concrete strips 11 feet wide, with macadam surfaces between, 6 feet wide, making a paved highway 28 feet in width. Defendant testified that as he rounded the curve in the highway, quite some distance south of the Inn, he was driving between 40 and 45 miles per hour. He stated: "I came around the curve and saw the driveway going out and it came to my mind there might be somebody coming out drinking. I slowed down, but didn't brake it, and after I passed the entrance I put my foot on the accelerator and fed the gas to it and I was meeting four or five cars and they had bright lights. Either the fourth or fifth dimmed his lights and at that time I saw the car parked in the road and then I applied my brakes." He testified that when he saw the car it was approximately 60 feet ahead of him. He further testified that he could have readily left the highway, but that he was unwilling to drive his ten-ton truck into the sand and was reasonably confident he could stop his truck before colliding with plaintiff's automobile.

Based upon this testimony of defendant's agent it is unnecessary to labor any of the other testimony in the record touching the question of defendant's negligence. The law of Florida makes it the duty of anyone operating an automobile on the highway at night to so operate the vehicle as to avoid striking another vehicle on the highway, moving in the same direction, or even a parked vehicle if the stopping of the vehicle was the result of a sudden emergency. Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 32 A.L.R. 881; Brandt v. Dodd, 150 Fla. 635, 8 So.2d 471; Spell v. U. S., D. C., 72 F.Supp. 731. The court holds that defendant was guilty of negligence in the operation of its vehicle on the highway at the time of the accident.

### Contributory Negligence of Plaintiff

■ Under the Florida law the defendant carries the burden of proof upon this issue. The controversy centers around whether or not Johnson was under the influence of intoxicants and whether or not he had improperly stopped plaintiff's car on the highway at the time of the accident.

■ On the question of whether or not Johnson had been drinking, the testimony is in hopeless conflict and is fairly evenly divided. The court is most favorably impressed by the testimony of the hospital attendant who dressed Johnson's scalp wound and being so impressed holds that defendant has not carried the burden of proof that Johnson was drinking on the night of the accident.

The next allegation of contributory negligence is that Johnson had stopped plaintiff's automobile on the highway at the time of the collision. In support of this defendant relies heavily on the fact that following the accident the highway patrolman preferred charges against Johnson for parking on the highway at night. Johnson was required to post a $25 bond. When Johnson's case was called for trial it was set on a day when Johnson was compelled to be elsewhere in the State, as a State employee, and he testified he thought he had perfected arrangements for a continuance of the case until a later date. However, he was in error in this respect and when the case was called his bond was forfeited.

Defendant also relies upon the testimony of the witness who testified that Johnson took a drink out of his whiskey bottle to the effect Johnson had stopped his car on the highway at the time of the collision. He testified he noticed plaintiff's car had come to a stop "a second or two before the truck lights came on it."

Defendant relies further upon the testimony of other witnesses as to the location of plaintiff following the accident. Plaintiff was knocked unconscious as the result of the accident. Johnson testified she was lying on the floor of the front seat with the cushion of the back seat on top of her and that he removed the cushion and assisted in transferring her to another auto-

mobile that transported her immediately to a hospital in Brooksville. Other witnesses testified that she was lying on the floor back of the front seat of the automobile and that Johnson did. not participate in transferring plaintiff to the automobile that carried her to the hospital. Plaintiff, being knocked unconscious, was, of course, unable to testify where she was lying when she was removed from her automobile.

■ Defendant stresses the testimony of what it describes as an impartial witness who refutes the testimony of plaintiff as to whether plaintiff's automobile was moving or had stopped on the highway at the time of the collision. However, under Florida law that is not material for the reason that defendant's chief witness, the operator of defendant's truck, testified that at the time of the collision four or five automobiles were approaching plaintiff's automobile and defendant's truck, from the opposite direction, and refused to dim their lights. It, therefore, became the duty of the plaintiff as well as that of defendant to operate each vehicle so as to avoid accident and if Johnson was so completely blinded that he could not see in the road ahead of him it became his duty, as it did the duty of the driver of defendant's truck, to stop, if necessary, until the approaching automobiles had passed and the view ahead had become clear so as to avoid an accident. The court, therefore, holds that under the testimony of defendant, as to the circumstances under which the accident occurred, plaintiff was not guilty of contributory negligence, and is entitled to recover in this case.

## Damages

The evidence shows the collision set fire to plaintiff's automobile and that it was destroyed by the fire. There is some dispute in the evidence as to the value of the automobile. Taking into consideration the salvage realized thereon, the court finds and holds that the evidence shows plaintiff sustained a net loss of $400 in the loss of her automobile.

Plaintiff lost certain personal property, consisting of a pair of glasses, a watch, a coat, her purse with her money therein, as well as damage to her dress. and hose she was wearing. The evidence is not in dispute as to the value of these items and the court finds the total value thereof to be in the sum of $160.50. Likewise plaintiff incurred doctor and hospital bills in the sum of $921, concerning which there is no dispute and this is also allowed.

■ Plaintiff operated a beauty parlor, in which, she testified, she earned an average of $35 per week on a year-around basis. She testified that it was necessary for her to close her beauty parlor from November 16, 1947 to some time in January, 1949, or approximately 14 months. Her beauty parlor was operated in her home, which saved her any rent in connection with its operation, but she had other expenses connected with its operation, which were saved during the time the beauty parlor was closed. The court is of the opinion that in this case $100. a month, or a total of $1,400 is a reasonable amount to allow plaintiff on account of business loss resulting from the accident.

■ Plaintiff suffered second-degree burns and a few other minor injuries as the result of this accident, all of which promptly cleared up. Two vertebra in her back were fractured and it was this injury that incapacitated her for a long period of time. The fracture of one vertebra cleared up within a reasonable time, but the other vertebra still shows some injury from the accident. She was confined to bed for 12 weeks and was compelled to wear a brace for a long time thereafter and she still wears it more than half the time. Plaintiff testified she suffers severe pain from this back injury and that it has created a serious nervous condition. She gave evidence of this nervous condition while on the stand. Her own physician testified he thinks the condition will clear up before too long and the physician called by defendant testified that in his opinion her suffering at this time is not produced at all by the back injury, but by the nervous condition brought about as the result of the accident and injury and that it should clear up promptly. There is no question that the accident was of a nature to seri-

ously upset plaintiff's nervous system. She testified that before passing into unconsciousness she saw the flames flare up following the collision. She remained unconscious for only a short time when she became again fully aware of her harrowing experience and the narrow escape she had from death. It was enough to bring on a nervous upset in anyone of the temperament of plaintiff. The court holds that $5,000 will compensate her for her personal injuries. The court, therefore, allows $7,881.50 as the total amount of plaintiff's recovery in this case.

A Judgment will be entered for plaintiff in that amount, in conformity with this Memorandum Decision.